

# THE ATTORNEY GENERAL

# OF TEXAS

**AUSTIN, TEXAS 78711**

JOHN L. HILL
ATTORNEY GENERAL

October 19, 1973

The Honorable Tom Hanna
Criminal District Attorney
P. O. Box 2553
Beaumont, Texas 77701

Opinion No. H- 133

Re:    Reimbursement of expenses
       of school board members
       incurred in various ways.

Dear Mr. Hanna:

You have requested our opinion about the propriety of reimbursing members of boards of trustees of independent school districts for certain expenses. Specifically, you ask whether it would be legal for the school district to reimburse board members for (1) actual expenses necessarily incurred for travel, meals and motel rooms to attend a convention of administrators and school board members at a point outside the State of Texas, assuming such convention dealt only with solutions to school problems and the planning of school business, (2) travel expenses and lodging to attend state conventions of administrators and school board members at a point in Texas, assuming that the member attending has been designated a delegate and the trip has been authorized by the Board and that the member will prominently participate in the program which concerns matters of importance to the school district, (3) necessary lodging and travel expenses incurred in attending to school business with the Texas Education Agency at the State Capitol in Austin, and (4) reasonable and necessary legal expenses, including attorneys fees, for the defense of a "taxpayer's suit in the nature of quo warranto brought for the purpose of removing . . . school board members from office, " assuming that in the actual disposition of the case the issues are essentially those of judgment and school management, with no issue as to any alleged illegal act involved and no charge of conflict-of-interests involved.

You advise that the by-laws of the local school district have for years authorized reimbursement to members of "expenses incurred in performance of duty, " that school districts "all over the state" regularly expend money for trips such as those described; and that Texas Education Agency rules and regulations anticipate such expenditures. But, you also point out that a 1939 Attorney General Opinion (O-1722) is opposed.

Some applicable provisions of the Texas Education Code are:

Section 23.26(b):

> "The trustees shall have the exclusive power to manage and govern the public free school of the district."

Section 23.26(d):

> "The trustees may adopt such rules, regulations and by-laws as they may deem proper."

Section 23.19(e):

> "The trustees shall serve without compensation."

Section 23.25:

> "The board of trustees of an independent school district shall have the powers and duties described in this subchapter, in addition to any of the powers and duties granted or imposed by this code or by law."

Section 20.48 entitled "Authorized Expenditures," provides in its subsection (a):

> "The public free school funds shall not be expended except as provided in this section."

No specific mention is made of reimbursement of expenses. However, it does provide in subsection (c):

> "Local school funds . . . may be used for the purposes enumerated for state and county funds . . . and for other purposes necessary in the conduct of the public schools to be determined by the board of trustees . . . (Emphasis added)

Similar statutes were in effect when Attorney General Opinion O-1722 (1939) was issued. The predecessor of § 20.48 was Article 2827, Vernon's Texas Civil Statutes. Like subsection (c) of § 20.48 of today's Education Code, its subsection (2) stated that local school funds might be used "for other purposes necessary in the conduct of the public school to be determined by the Board of Trustees." Among other things, the Opinion O-1722 specifically dealt with whether or not local board members could be reimbursed for expenses incurred in attending meetings of a state organization similar to those you describe.

The 1939 opinion concluded there was "nothing to indicate" that the existence of the state-wide organizations of school trustees or their conventions was necessary in the conduct of the public schools. It went on to state that whatever benefit might accrue to the school through the attendance at those meetings "would be remote and indirect." Upon this reasoning, it was determined that the board members were not entitled to reimbursement for dues in the state organizations or to meet expenses in attending its convention.

The problems you pose are somewhat similar to those considered in Attorney General Opinion H-70 (1973). The question there was whether school districts could purchase insurance to protect school trustees from costs of litigation growing out of the discharge of official duties. There, also, early Attorney General opinions had concluded as a matter of law that the purchase of indemnity-type insurance was an unnecessary and unreasonable expenditure of public funds. But the 1973 opinion indicated that <u>facts</u> would control - that it was no longer possible to conclude as a <u>matter of law</u> that such an expenditure of public funds was unreasonable and unnecessary. It emphasized the provision § 20.48(c) of the Education Code that funds could be used "for other purposes necessary in the conduct of the public schools to be determined by the board of trustees . . . " construed as proper public purposes, and noted recent developments in the law.

The concept of "public purpose" has undergone expansion in the last twenty-five years. The benefits realized need not now be direct or immediate. Change and relaxation of judicial attitudes on the matter are reflected in Court decisions from then to the present time. Compare <u>Housing Authority of City of Dallas</u> v. <u>Higginbotham</u>, 143 S.W.2d 79 (Tex. 1940); <u>Friedman v. American Surety Co. of New York</u>,

151 S. W. 2d 570 (Tex. 1941); <u>Davis v. City of Lubbock</u>, 326 S. W. 2d 699 (Tex. 1959); <u>State v. City of Austin</u>, 331 S. W. 2d 737 (Tex. 1960); <u>Barrington v. Cokinos</u>, 338 S. W. 2d 133 (Tex. 1960); <u>Bullock v. Calvert</u>, 480 S. W. 2d 367 (Tex. 1972); and <u>Harris County v. Dowlearn</u> 489 S. W. 2d 140 (Tex. Civ. App. , Houston [14th Dist.] 1973, err. ref'd. , n. r. e. ).

In our opinion, answers to all your questions hinge on a determination of whether the contemplated expenditures are for "purposes necessary in the conduct of the public schools." And that determination, at least initially, is to be made by the school board.

School districts are agencies of the State. <u>Mosely v. City of Dallas</u>, 17 S. W. 2d 36 (Tex. Comm. 1929); 51 <u>Tex. Jur. 2d</u>, Schools, § 6. If a school board should properly determine, in the exercise of its delegated legislative powers, that the payment of the expenses of trustees to attend school-related meetings is "necessary in the conduct of the public schools," we could not say, except by referring to the particular facts, that such action would be arbitrary or contrary to law. However, any such expenditure must not be disguised compensation for services. It must serve a true public purpose and not merely private ends. School Boards do not have an unbridled discretion. The question of whether a true "public purpose" has been served is ultimately for the courts. <u>Davis v. City of Lubbock</u>, supra. Compare Attorney General Letter Advisory No. 24 (1973).

In Attorney General Letter Advisory No. 6 (1973) we were concerned with institutions of higher learning and the scope of § 54. 503(b) of the Texas Education Code, which similarly provides, in part:

> "The governing board of an institution of higher education may charge and collect from students registered at the institution fees to cover the cost of student services <u>which the board deems necessary or desirable in carrying out the educational functions of the institution.</u>" (Emphasis added)

With reference to the power of the governing boards to authorize the collection of fees for certain activities, we said:

> "The governing board of an institution of
> higher education, in adopting rules and regula-
> tions for its operation, exercises delegated legis-
> lative powers, and in the absence of a clear show-
> ing that it has acted arbitrarily or has abused the
> authority vested in it, the courts will not interfere."

and we concluded:

> "We are of the opinion, therefore, that the
> governing board of an educational institution of
> higher learning may now authorize a public inter-
> est research activity as a student service 'necessary
> or desirable in carrying out the educational functions
> of the institution', and may provide for the collection
> from students of voluntary fees to cover the cost of
> such service, provided authorization is pursuant to
> regulations comporting with equal protection and due
> process constitutional requirements. We cannot say
> in advance, nor do we think the courts could say that
> such authorization would be arbitrary or contrary to
> law without first examining the facts of each individual
> case."

We are led to similar conclusions here. Reimbursements for the
travel expenses you inquired about would not be illegal, in our opinion, if
their payment was "necessary in the conduct of the public schools," a
matter to be determined from the particular factual context. Many of your
stated assumptions tend to support a conclusion that expenses could be
reimbursed, but it cannot be said that such a determination in an individual
case would or would not be arbitrary or contrary to law without first exam-
ining all the facts.

Your question concerning reimbursement of expenses incurred in
defending a quo warranto action requires further examination. Though the
principal is the same, the application of it may be modified by the legal
characteristics of a quo warranto action, which is not an ordinary lawsuit.

Quo warranto is a special type of court action used to determine whether a public office is occupied by a pretender or a usurper, rather than by a person legally entitled to hold it. It is a suit to try the title to an office.

You ask about a situation where a taxpayer has brought a suit in the nature of a quo warranto for the purpose of removing particular members from office, and where in the actual disposition of the case, the issues are essentially those of judgment and school management, and where "no issue as to any illegal act, and no charge of self-dealing, is involved." It is apparent that such facts do not fit the description of a true quo warranto action or a true ouster suit. If considered either, however, our answer would be the same because in either case, what seemingly is at stake is only the personal right of the officeholder to the continued possession of the office. See 47 Tex. Jur. 2d, Public Officers, § § 7, 90. If other interests are at stake, other perspectives are proper.

In Attorney General Opinion H-70 (1973), it is said:

"It has long been the position of this office that a school district may retain and pay to protect its interests in Court . . . . "

" . . .

"But the authority of school trustees to employ attorneys is limited to those situations where the legitimate interests of the district - - not merely the personal interests of the trustees - - require assertion or defense. See Attorney General Opinion O-2103 (1940) where payment of attorneys fees charged for resisting quo warranto suits directed against the former trustees was dis- approved . . . . "

Attorney General Opinion H-70 referred to Attorney General Letter Advisory No. 24 (1973) where [citing City National Bank of Austin v. Presidio County, 26 S.W. 775 (Tex. Civ. App., 1894, no writ), among others] it was said:

> "Public money cannot be spent to defend private
> interests [Art. 3, § 51, Texas Constitution] . . .
> Of course, suits may be only nominally against
> individuals when they are really designed to ob-
> struct or control the legitimate performance of
> official duties. Such litigation does involve county
> interests . . . and there is no constitutional pro-
> hibition against the use of public funds to defend
> a county's interest in a legal contest, even if
> the county is not named as a party to the suit.
> However, if only the private interests of the def-
> endant officer or employee are at stake, no defense
> could be provided, even though the act which pre-
> cipitated the suit occurred while the officer or em-
> ployee was ostensibly engaged in the performance
> of public duties. The public has no liability for the
> acts of an officer or employee acting outside of (or
> beyond) the scope of his legal powers, and ordinarily
> it has no interest in protecting him from the con-
> sequences of such acts."

Attorney General Opinion O-2103 (1940) based its determination that attorneys fees in the asserted quo warranto suits involved there could not be paid with public funds on a public interest/private interest analysis which led to the conclusion that only private interests were involved. We cannot say that in no quo warranto or ouster case, or other case of a similar nature, could the defense of such a suit be vital to the district's interest and "necessary in the conduct of the public schools," but we believe such a showing would be difficult, and no reimbursement of expenses, including attorneys fees, would be permitted in the absence of a proper finding thereof. On the other hand, an attack against the district in the guise of a quo warranto or ouster suit might, in special circumstances, engage the vital interests of the district and make the expenditure of funds in connection therewith "necessary" in the public sense. The facts are determinative.

## S U M M A R Y

Reimbursement of travel or legal expenses for school board members would not be illegal if their payment was determined to be necessary in the conduct of the public schools and to serve a proper public purpose.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee